Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of

**Assigned call numbers 928-401-8707 and 928-401-8076 stored at premises controlled by Cellular One of Northeastern Arizona, headquartered at 1500 South White Mountain Road, Show Low, AZ 85901**

Case No.   22-4178mb

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona (identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _____June 15, 2022_____.
                                                                            *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

any U.S. Magistrate Judge on duty in AZ   .
        *(name)*
☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)  ☐ for  days (*not to exceed 30*)
                                                  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

**Camille D. Bibles**
Digitally signed by Camille D. Bibles
Date: 2022.06.01 17:47:23 -07'00'
*Judge's signature*

City and State:   ___Flagstaff, Arizona_____

___Honorable Camille D. Bibles, U.S. Magistrate Judge___
*Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.:   22-4178mb | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

Executing officer's signature

Printed name and title

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with phone numbers (928) 401-8707 and (928) 401-8076 that are stored at premises owned, maintained, controlled, or operated by Cellular One of Northeastern Arizona, headquartered at 1500 South White Mountain Road, Show Low, AZ 85901.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Cellular One of Northeastern Arizona

To the extent that the information described in Attachment A is within the possession, custody, or control of Cellular One of Northeastern Arizona, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Cellular One of Northeastern Arizona or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Cellular One of Northeastern Arizona is required to disclose the following information to the government for each account or identifier listed in Attachment A:

     a.     All voice mail, text, and multimedia messages from May 12, 2022 through May 15, 2022 stored and presently contained in, or on behalf of the account or identifier;

     b.     All existing printouts from original storage of all of the text messages described above;

     c.     All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from May 12, 2022 through May 15, 2022;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from May 12, 2022 through May 15, 2022

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.      Detailed billing records, showing all billable calls including outgoing digits, from May 12, 2022 through May 15, 2022;

g.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from May 12, 2022 through May 15, 2022;

h.      Incoming and outgoing telephone numbers, from May 12, 2022 through May 15, 2022;

i.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.      All records pertaining to communications between Cellular One of Northeastern Arizona and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 Days of issuance of this warrant.

## II. Information to be seized by the government

The following items of evidence, contraband, fruits, and instrumentalities that relate to violations of 18 U.S.C. § 1153, 1112, and ARS §13-3623, which make it illegal to commit involuntary manslaughter and child abuse.

    a.    Information related to the consumption of alcohol or any substance that could impair the driver. Additionally, any evidence related to distracting the driver from safely driving the vehicle. Information related to child neglect.

    b.    Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

    c.    Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

    d.    Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

    e.    The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

    f.    The identity of the person(s) who sent to and/or received communications from the cellular devices.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:
**Assigned call numbers 928-401-8707 and 928-401-8076 stored at premises controlled by Cellular One of Northeastern Arizona, headquartered at 1500 South White Mountain Road, Show Low, AZ 85901**

)
)
)
)

Case No.   22-4178mb

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>F.B.I. Special Agent Brandon King</u>, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**As further described in Attachment A.**

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized)*:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [X] evidence of a crime;
- [ ] contraband, fruits of crime, or other items illegally possessed;
- [ ] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153 and 1112 | Manslaughter |

The application is based upon the following facts:

- [X] Continued on the attached sheet (see attached **Affidavit**).
- [ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Powell    *Ryan Powell*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 6/1/2022

*Brandon King*
_____
Applicant's Signature

Brandon King, F.B.I. Special Agent
_____
Printed Name and Title

**Sworn by Telephone**

Date/Time: _____

Date: _____

Camille D. Bibles

Digitally signed by Camille D. Bibles
Date: 2022.06.01 17:46:54 -07'00'
_____
Judge's Signature

Camille D. Bibles,
United States Magistrate Judge
_____
Printed Name and Title

City and State:   Flagstaff, AZ

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with phone numbers (928) 401-8707 and (928) 401-8076 that are stored at premises owned, maintained, controlled, or operated by Cellular One of Northeastern Arizona, headquartered at 1500 South White Mountain Road, Show Low, AZ 85901.

# ATTACHMENT B

## Particular Things to be Seized

### I.  Information to be disclosed by Cellular One of Northeastern Arizona

To the extent that the information described in Attachment A is within the possession, custody, or control of Cellular One of Northeastern Arizona, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Cellular One of Northeastern Arizona or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Cellular One of Northeastern Arizona is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from May 12, 2022 through May 15, 2022 stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from May 12, 2022 through May 15, 2022;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from May 12, 2022 through May 15, 2022

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.      Detailed billing records, showing all billable calls including outgoing digits, from May 12, 2022 through May 15, 2022;

g.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from May 12, 2022 through May 15, 2022;

h.      Incoming and outgoing telephone numbers, from May 12, 2022 through May 15, 2022;

i.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.      All records pertaining to communications between Cellular One of Northeastern Arizona and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 Days of issuance of this warrant.

## II. Information to be seized by the government

The following items of evidence, contraband, fruits, and instrumentalities that relate to violations of 18 U.S.C. § 1153, 1112, and ARS §13-3623, which make it illegal to commit involuntary manslaughter and child abuse.

a.  Information related to the consumption of alcohol or any substance that could impair the driver.  Additionally, any evidence related to distracting the driver from safely driving the vehicle.  Information related to child neglect.

b.  Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.  Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.  Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.  The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

f.  The identity of the person(s) who sent to and/or received communications from the cellular devices.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, FBI Special Agent Brandon King, being first duly sworn, hereby depose and state as follows:

1.     I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Cellular One of Northeastern Arizona, a wireless provider headquartered at 1500 South White Mountain Road, Show Low, AZ 85901.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Cellular One of Northeastern Arizona to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since 2019. I previously served as a sworn law enforcement officer for approximately four years with the Akron Police Department, in Akron, Ohio.   I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in narcotics investigations, white collar crime, cyber-crime, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics.  I am currently assigned to the Flagstaff Resident Agency of the Phoenix Division. I am an

1

"investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. In the course of my official duties, I am charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation and Hopi Indian Reservation within the District of Arizona. Based on my training, education, and experience, I know that the Navajo and Hopi Tribes are federally recognized.

3.     The information contained in this affidavit comes from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## INTRODUCTION

4.     As more fully described below, this matter involves the investigation of a vehicular manslaughter that took place in the early morning hours of May 14, 2022, in the Tuba City District on the Navajo Nation Indian Reservation, located within the District of Arizona. A single-car crash killed two juvenile victims, R.H. and Ka.H., who were passengers in the car. Another minor passenger, O.U., had serious bodily injuries. The adult passenger, K.H., the driver's sister, sustained serious bodily injuries. The driver, Lavah Tewawina (Lavah), also sustained injuries. Lavah is a member of the Hopi Indian Tribe.

2

5.     This affidavit supports the application for a search warrant authorizing the search of a telephone provider Cellular One of Northeastern Arizona, to release records related to two cellular phone numbers; (928) 401-8707 and (928) 401-8076.  There is probable cause to believe that evidence of involuntary manslaughter, in violation of Title 18, United States Code, §§ 1153 and 1112, will be located in the telephonic records. Additionally, there is probable cause to believe that evidence of child abuse, in violation of A.R.S. § 13-3623, will be located in the telephonic records.   The telephone numbers are particularly described in **Attachment A**, and the evidence being sought is particularly described in **Attachment B.**

## PROBABLE CAUSE

6.     In the early morning of May 14, 2022, police dispatcher Richella Tracey received a call from a male person reporting a vehicle accident near Moencopi, Arizona. The call was transferred to the Hopi Police. At 0407, the Hopi Police Department requested the assistance of Tuba City Police Department. At 0428, a Hopi Police Officer arrived on scene and informed Tuba City Police that the vehicle accident was at mile post 333, located on the Navajo Nation.  At 0433, Navajo Medical Emergency unit #47 arrived on scene containing two EMTs.  The EMTs confirmed there were two deceased children on scene and transported another child with significant head injuries, deemed to be in critical condition, to the hospital.

7.     Officer Lomahoynaya of the Hopi Law Enforcement Service was the first police officer to arrive on scene.  Officer Lomahoynaya approached a man named B.P., a

3

motorist who was in the area at the time of the crash. B.P. was holding a seriously injured child in his arms. B.P. said there were two other children and two adult females involved in the crash. The two adult females, Lavah and K.H., went inside B.P.'s vehicle shortly after he arrived at the scene. Officer Lomahoynaya made contact with K.H., who said her sister Lavah had been driving. The officer smelled a strong odor of alcohol emitting from K.H.'s breath.

8.      Officer Lomeyestewa was the second officer to arrive on scene. Officer Lomeyestewa made contact with Lavah, who was sitting in the rear of B.P.'s vehicle. Lavah told the officer, "I was in the front driving the whole time." Lavah emitted an odor of an alcoholic beverage from her person and spoke with very slurred speech.

9.      Navajo Nation Officer Simeona spoke with Lavah while on scene. According to the officer, Lavah had the strong odor of alcohol on her breath and had slurred speech. When asked by the officer what happened, Lavah said she was driving and attempting to pass a vehicle.

10.     An Arizona Department of Public Safety (DPS) Officer arrived at the scene and assisted with the investigation.

11.     There were no child safety seats in the vehicle.

12.     As part of the investigation, the FBI interviewed B.P. He said that he was on his way home from Tuba City when he saw headlights coming towards him; the lights were on top of a hill and soon disappeared. B.P. observed a flash and slowed his vehicle. B.P. observed a bunch of dust and then saw a vehicle on its side. B.P. turned his emergency lights on. B.P. heard ladies screaming and a little boy yelling. B.P. called a friend and

4

asked him to notify an ambulance and police. B.P. searched the area utilizing the light of his phone. B.P. saw a boy in the gully. The boy said he was hurt and cold. The boy had blood on his face and only wore a diaper. B.P. got his jacket from his car to wrap the child. Two women exited the crashed vehicle and eventually went to B.P.'s car without B.P. instructing them to do so. B.P. returned to the injured boy and waited for approximately 40-50 minutes until the police arrived. B.P. overheard one of the women telling the police that a silver SUV came too close and caused her to wreck. B.P. did not recall seeing any vehicles in front of him or oncoming from Tuba City to the scene of the crash.

13.     As part of the investigation, the FBI interviewed K.H. K.H. provided her telephone number as (928) 401-8076. K.H. initially said she was the driver. K.H. later clarified that Lavah had been the driver. K.H. stated the tire pressure light came on and they pulled over. K.H. stated she had two beers and half a pint. K.H. said she wanted an attorney and ended the interview.

14.     As part of the investigation, the FBI interviewed Lavah. Lavah said her telephone was in the car and that her telephone number was (928) 401-8707. Lavah said her sister K.H.'s phone number is (928) 401-8076. Lavah confirmed she was member of the Hopi Tribe. Lavah stated she would no longer answer questions without an attorney present.

15.     A law enforcement database established that the service provider for the phone numbers provided by Lavah and K.H. is Cellular One of Northeastern Arizona.

16.     Lavah was transported to the hospital. Medical records show that approximately an hour-and-a-half after the crash, her blood alcohol concentration was .243.

5

## Alcohol Recovered from the Scene

17.     Officers observed a small bottle of vodka and a beer can at the crash scene.

The beer can still had liquid inside.

## Photographs of Alcohol from Scene



*Image 1 – This photograph taken by a Department of Public Safety Officer shows the condition of the vehicle after the crash. A red circle was inserted as an overlay to the photograph in order to demonstrate the proximity of the object from Image 2 to the crash.*



*Image 2 – This photograph taken by a Department of Public Safety Officer shows a Smirnoff – Raspberry 50ml bottle. As seen in Image 1.*



*Image 3 – This photograph taken by a Department of Public Safety Officer shows a Modello beer can located next to a service receipt from Discount Tire in Flagstaff, Arizona, linked to Lavah Tewawina.   A red circle was inserted as an overlay to demonstrate the proximity of the object to a known object belonging to Lavah Tewawina.*



*Image 4 – This photograph taken by a Department of Public Safety Officer shows the Modello beer can from image 3 being poured out; demonstrating that there was alcohol still present inside of the can.*

## Cellular Phones Recovered from Scene

18.     Two cellular phones were recovered from the scene:

      a.  A black Apple iPhone with a black cover; and

      b.  An Android Phone with a lime green Otterbox cover.

19.     A DPS Officer recovered the black Apple iPhone among the debris.  The officer activated the power button and observed a message stating that a named contact (with initials O.D.) sent an iMessage at 3:49 a.m., which was around the estimated time of

7

the crash.  The first name of the contact who sent the message is the first name of the

surviving child in the crash.

20.     The Android Phone was located below the vehicle when the vehicle was

brought to an upright position.

### Photographs of Cellular Phone Recovered from Scene



*Image 5 – This photograph taken by a Department of Public Safety Officer shows debris from the motor vehicle accident.  The red circle drawn on the photograph depicts the location of the Apple iPhone.*



*Image 6 – A close-up photograph of the Apple iPhone circled in red from Image 5.*



*Image 7* – As stated in Paragraph 19 of this affidavit, a text message was sent at 3:49 AM from a contact with initials O.D.



*Image 8* – An Android phone was discovered once the vehicle was moved to an upright position.  The phone's location is identified by the red circle.

## THINGS TO BE SEARCHED FOR AND SEIZED

21.     In my training and experience, I have learned that Cellular One of Northeastern Arizona is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for Cellular One of Northeastern Arizona

9

subscribers may be located on the computers of Cellular One of Northeastern Arizona. Subsentio is the company that manages their legal reviews. Further, I am aware that computers located at Cellular One of Northeastern Arizona contain information and other stored electronic communications belonging to unrelated third parties.

22.     Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Cellular One of Northeastern Arizona for weeks or months.

23.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Cellular One of Northeastern Arizona for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

24.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the

account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

25.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

26.    Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data

about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

27.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

28.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

29.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time.  Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used.  Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation.  This "timeline" information may tend to either inculpate or exculpate the cellular device owner.  Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video).  Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of

13

the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

30.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Cellular One of Northeastern Arizona to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

31.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

The government will execute this warrant by serving the warrant on Cellular One of Northeastern Arizona. Because the warrant will be served on Cellular One of Northeastern Arizona, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## CONCLUSION

32.     Based on the information in this affidavit, your Affiant respectfully submits

there is probable cause to search the phone records described in **Attachment A** for the

things described in **Attachment B**.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to
the best of my knowledge and belief.**

_Brandon King_
Brandon King
Special Agent, FBI

Sworn by Telephone

Date/Time: _____

June 1, 2022
Date

**Camille D. Bibles**   Digitally signed by
Camille D. Bibles
Date: 2022.06.01
17:46:17 -07'00'

Honorable Camille D. Bibles
United States Magistrate Judge